Jennifer Stisa Granick (SBN 168423)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Seventh Floor
San Francisco, CA 94110
Telephone: (415) 343-0758
jgranick@aclu.org

Nathan Freed Wessler (*pro hac vice* to be filed)
Scarlet Kim (*pro hac vice* to be filed)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
nwessler@aclu.org
scarletk@aclu.org

Stephen A. Loney, Jr. (*pro hac vice* to be filed)
Ari Shapell (*pro hac vice* to be filed)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
Telephone: (215) 592-1513
sloney@aclupa.org
ashapell@aclupa.org

Jacob Snow (SBN 285075)
Nicolas Hidalgo (SBN 339177)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
jsnow@aclunc.org
nhidalgo@aclunc.org

*Attorneys for Movant Jon Doe*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In the Matter of Subpoena Number HSI-DC-2026-007280-001:*<br><br>JON DOE,<br><br>      Movant,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>      Respondent. | Misc. Case No.:<br><br>**DECLARATION OF MOVANT JON DOE IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**<br><br>Date: To be set by the Court<br>Time: To be set by the Court<br>Courtroom: To be set by the Court |

I, JON DOE, declare as follows:

1. I am an individual over 18 years of age and the movant in this action. I make this declaration in support of the Motion to Quash Administrative Subpoena relating to the Department of Homeland Security ("DHS") administrative subpoena that seeks personal information related to me and my Google account. I can testify to the following matters from personal knowledge, except as those matters stated on information and belief. As to those I believe them to be true.

**My Background**

2. I am a resident of the greater Philadelphia area and a U.S. citizen.

3. I care deeply about international and human rights and refugee issues and my ability to advocate for the humane treatment of asylum seekers is important to me. I took a class to learn how to advocate for immigrants, I volunteer with my synagogue's refugee committee, and I contact government representatives about these and other issues.

4. On the morning of October 30, 2025, I read the *Washington Post* article authored by John Cox, *Trump Administration Makes Misleading Case in High-Stakes Asylum Hearing*.[1] The article reported on troubling conduct by government attorneys who are attempting to deport a man who assisted American forces in Afghanistan back to that country, where the man says he will almost certainly be killed by the Taliban. H is the pseudonym that the *Washington Post* article used for the man.

5. Upon reading the article, I was alarmed by the reported government conduct. I wished to express my concerns about this egregious violation of human rights principles, and so I endeavored to urge the government to take the threats to H's life seriously.

---

[1] John Woodrow Cox, *Trump Administration Makes Misleading Case in High-Stakes Asylum Hearing*, Wash. Post (Oct. 30, 2025), https://www.washingtonpost.com/investigations/2025/10/30/trump-asylum-afghanistan-deport-immigration/.

6. I noted that the *Washington Post* article named "[t]he lead attorney for Homeland Security, Joseph Dernbach."

7. Through a brief Google search, I found a DHS email address associated with Joseph Dernbach.

8. At 10:34 AM ET on October 30, 2025, I sent an email to that address from my personal Gmail account. The email subject line was "H" and the body of the email read as follows:

> Mr. Dernbach, don't play Russian roulette with H's life. Err on the side of caution. There's a reason the US government along with many other governments don't recognize the Taliban. Apply principles of common sense and decency.

9. I signed the email with my first and last name. A true and correct copy of this email dated October 30, 2025, is attached as **Exhibit A**. My name and email address are redacted in exhibits to this declaration to protect my privacy and to avoid the threat of harassment.

10. This email was the full extent of my communication with Dernbach or any other representative of DHS prior to the issuance of the administrative subpoena.

**Email Exchanges with Google**

11. At 3:45 PM ET, on October 30, 2025—the same day that I wrote Dernbach—I received an email from requestrecords-noreply@google.com with the subject line "[Time Sensitive] Notification from Google." On information and belief, this email and linked user notice was from Google. A true and correct copy of this message is attached as **Exhibit B**.

12. The email stated the following:

> Google has received legal process from a Law Enforcement authority compelling the release of information related to your Google Account. . . . For a copy of the legal demand, please contact the issuing authority using the information provided above.

13. The email stated that the legal request type was a subpoena, in the jurisdiction of the Eastern District of Virginia, issued by the Department of Homeland Security, with an issuance date of October 29, 2025. It also provided a reference number.

14. The email from requestrecords-noreply@google.com directed me to contact DHS for more information regarding the case but did not provide any contact information for the agency. It also did not provide a copy of the subpoena.

15. Instead, the email provided a link for more information about the release. When I clicked on the link it took me to a general "User notice for release of information." A true and correct copy of the linked "User notice for release of information" is enclosed as **Exhibit C.**

16. The linked notice did not help me understand why law enforcement was subpoenaing my personal information, nor my options for responding. It stated:

> Google has received a compulsory legal demand from a Law Enforcement authority which obligates Google to provide certain information related to the account that received that email. **No action is required from you.** However, you may wish to challenge the legal demand in court by filing a motion to quash it. If you choose to do so, we must promptly receive a copy of your filed motion to quash, which must be file stamped by a court of competent jurisdiction. Otherwise, Google will, to the extent required by law, provide the information required by the legal demand. See the Electronic Communications Privacy Act, 18 U.S.C. § 2701 et seq. . . . You or your legal representation may return to this page at any time over the next 7 days to upload a motion to quash or request a copy of the legal process. You must use the exact URL linked in the email when you do. **After 7 days, this page will no longer be accessible**.

17. The notice provided a transparency report, and a box to upload a letter of representation or a motion to quash file-stamped by a court of competent jurisdiction.

DECLARATION OF MOVANT JON DOE IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA
4                                                                    Misc. Case No._____

18. I was shocked and confused when I received the email from Google. I was fearful about why the government was targeting me and what would happen if Google gave the government my personal information. I speculated that it had to do with the concerned email that I had sent to Joseph Dernbach that morning.

19. The email from Google made me feel fearful and helpless, as I did not understand the opaque legal process and there was no apparent way to reply to the company and ask for more information. The linked notice indicated that I only had seven days to file a motion to quash, however I did not have an attorney or the financial means to pay for legal representation.

20. I searched the Internet for DHS contact information to follow up with the agency for a copy of the subpoena like the email from Google advised, but the phone numbers I identified online were no longer in operation or were for entirely irrelevant purposes.

21. I reached out to nonprofit legal organizations for support, and a nonprofit eventually provided me with a new contact address at Google, usernotice@google.com, to request a copy of the subpoena.

22. On November 21, 2025, I wrote to usernotice@google.com and requested a copy of the subpoena. I reiterated my concern that the company had not provided sufficient information to permit me to obtain the subpoena directly from the agency, which prevented me from defending my rights. A true and correct copy of this email exchange with Google is included in **Exhibit D**.

23. That same day, I received an email response from usernotice@google.com signed by "Legal Investigations Support." The email stated

> Google has received legal process from the Department of Homeland Security compelling the release of information related to your account. Attached is a copy of the legal process. For more information about Google's user notification process and the different data types that Google may be required to disclose, view our transparency report at http://www.google.com/transparencyreport/userdatarequests/legalprocess/#i_received_an_email. Google is not in a position to

DECLARATION OF MOVANT JON DOE IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA
5                                                   Misc. Case No._____

provide you with legal advice or discuss the substance of the legal process. For more information regarding this case, including a copy of any production, please contact the agency that issued the legal process.

24. The November 21 email from usernotice@google.com included an attachment titled "DEPARTMENT OF HOMELAND SECURITY IMMIGRATION ENFORCEMENT SUBPOENA to Appear and/or Produce Records 8 U.S.C. § 1225(d) and 8 C.F.R. § 287.4." The document listed "Google – LERS Legal Department Custodian of Records" as the recipient, and sought a variety of information about me and my Gmail account. A true and correct copy of the document that was attached to the email dated November 21, 2025 is attached as **Exhibit E.**

25. The subpoena is dated October 30, 2025. However, Google's original October 30, 2025 email to me stated that the subpoena issuance date was October 29, 2025. It is my belief that Google made an error in describing the subpoena issuance date in its email to me.

26. On November 24, 2025, I received a new email from usernotice@google.com that informed me that Google "has not yet responded to [the] legal process issued by the Department of Homeland Security compelling the release of information related to your Google account." *See* **Exhibit D**.

27. On November 27, 2025, I wrote to usernotice@google.com with the following message:

> I am relieved to receive your assurance that you have **NOT** disclosed my account information to the Department of Homeland Security. I ask that you not do so without a court order sanctioning the disclosure [sic]. I see that the records information that is the subject of the subpoena, is extremely broad and on that ground alone is defensible. I am not someone with sufficient financial means to enable retaining a lawyer to submit a motion to quash. I am currently fundraising to see if I can gather sufficient resources to be able to do that. In the meantime I am requesting that you please provide me with advance notice prior to any imminent

release by Google including any court order to that effect. Please acknowledge receipt of this email.

A true and correct copy of this email is included as **Exhibit F**.

28. On December 2, 2025, I followed up with usernotice@google.com requesting confirmation of receipt of my November 27 email.

**DHS Comes to My Home to Interrogate Me**

29. I reside in a quiet suburban town with my spouse.

30. At around 9:30 AM ET, on November 17, 2025, I heard a knock on our front door and observed two vehicles parked outside, a local police vehicle, and an unmarked sedan.

31. Three individuals were standing on my porch. Two were in plain clothes and the third was a uniformed police officer. My spouse and I stepped outside, and the plain-clothed individuals introduced themselves as agents of Homeland Security Investigations.

32. I asked to see identification and the agents showed me their badges. One of the agents asked me if my name was Jon Doe, and I said yes.

33. The police officer went inside the house with my spouse, while I remained outside with the two DHS agents. The agents said they wanted to ask me some questions.

34. I was panicked, scared, and embarrassed, but I tried to remain calm and answer their questions.

35. One of the agents took out his phone and pulled up the email that I had written to Joseph Dernbach on October 30, 2025. He asked me if I had written the email, and after I confirmed that I had, asked me to explain it. I explained that I wrote the email in response to the *Washington Post* article about "H", and that it was simply an expression of my opinion about H's case and an appeal to protect H from the Taliban. I recounted my concerns: that H had taken risks to support the U.S. mission in Afghanistan by providing assistance to American forces and in speaking out against the Taliban. I explained that I found it unconscionable that H lost his humanitarian parole status under the

Trump administration even though he faced execution upon deportation to Afghanistan. I told the agents that the fact that the U.S. doesn't recognize the legitimacy of the Taliban regime speaks volumes about how dangerous it would be to send him back to Afghanistan, and that this is no way to help those who helped us.

36. The agents asked me how I obtained Dernbach's email, and I explained that I found it with a brief Google search.

37. I asked the agents about the issuance of the subpoena, and the agents seemed to be unaware of it. I pulled the subpoena up on my phone and showed it to them. The agents indicated that this must be how the agency had learned about my address, but that it was only conjecture on their part.

38. After twenty minutes, the agents concluded their questioning and I went inside my house. The agents remained in front of my house for some time speaking with the police officer.

**Fearfulness After the Subpoena and Interrogation**

39. I was shocked, fearful, and deeply troubled by this escalating action. I was deeply troubled to be questioned by government agents at my home. My spouse was also upset and fearful after the encounter.

40. As a result of this investigation against me, with no apparent articulable purpose, I have been concerned for my safety. Especially given the hostile climate against immigrants, I am afraid the government is retaliating against me for my criticism of DHS.

41. I believe DHS is targeting me because I expressed disagreement with the government's handling of Afghan asylum cases.

42. Because of this investigation, I am hesitant to communicate with government officials again about issues that I care about. I feel especially intimidated and chilled in my advocacy for immigrants and refugees. Since I learned about the subpoena, I have not sent any messages to government officials expressing my views on any issue.

43. I am also afraid that, because of this investigation, members of the public who find out about it will assume I have done something wrong and treat me as a threat.

44. This compounding fear and anxiety makes me think twice about whether and how I should participate in advocacy on immigration and other issues in the future.

45. I declare under penalty of perjury that the foregoing is true and correct.

Executed this __1st__ day of __February__, 2026.

                         */s/ John Doe*

                             Jon Doe